(126 So. 673)

**NEW ORLEANS & N. E. R. R. v. CITY OF NEW ORLEANS.**

No. 30291.

Feb. 3, 1930.

Rehearing Denied March 5, 1930.

Monroe & Lemann and Nicholas Callan, all of New Orleans, for appellant.

Bertrand I. Cahn, City Atty., and Francis P. Burns, Asst. City Atty., both of New Orleans, for appellee.

THOMPSON, J.

This is an application for an injunction to prevent the city of New Orleans from enforcing charges for paving assessed against certain property owned by the plaintiff.

The amount claimed by the city is $3,823.49. The plaintiff asks that this amount be reduced to $2,878.05, a resulting difference of $945.44.

After a hearing, the lower court refused the injunction and dismissed the plaintiff's suit.

The plaintiff owns a portion of squares 365 and 398 fronting on St. Claude avenue.

Square 365 has a total frontage of 379.99 feet, of which the plaintiff owns 155 feet, and square 398 has a total frontage of 380 feet, of which the plaintiff owns 120 feet. The squares are on opposite sides of St. Claude avenue. This avenue is a double street with a neutral ground in the middle.

Several years prior to 1923 the city gave the plaintiff the right to lay its switch tracks across St. Claude avenue on condition that the railway company should keep the street in good condition and to pave or pay the cost of paving between the rails of its tracks and for 2 feet on each side of the tracks.

The railroad company laid four of its tracks across the avenue at practically right angles

and paved the area between the rails of these tracks and for 2 feet on each side.

The paving made or paid for by the plaintiff covered a space of 34-foot frontage on each side of the avenue.

In the year 1923 the city caused St. Claude avenue to be paved on both sides, including all intervening sections and intersections from the lower line of Elysian Fields avenue to the upper line of Montegut street except that paved by the railway company.

The total area was 5,727.10 linear feet, and included the 34 feet on both sides which had been paved by the railroad company. The total cost was $79,627.42, or a cost of $13.903619 per front foot.

The plaintiff was charged at the above rate per front foot on its entire frontage, including the 34 feet on each side of the avenue.

The city engineer, when asked how the city arrived at the paving charges for the Northeastern Railroad and the method used for fixing the front foot rate, testified that there were two sets of bills, one for charges between intersections, and the other being intersection charges; that the work done at intersections is computed and billed as work done between intersections, and the work done between all intersections is secured, and then a consistent rate per front foot is arrived at, which is multiplied by the front footage against each property; that the intersection charges are figured by taking the entire amount of work done under that contract by the city and dividing it into the total property footage within half a block of the intersection on each side of the intersection, and that gives the rate for the intersection, and that is applied to the property on each side of the intersection for half a block.

"In the case of the Northeastern Railroad, it had the rate so secured applied against its entire property frontage on the job."

■ Act 159 of 1912, p. 278, provided that the city of New Orleans should bear the entire cost of roadway or roadways paving in all street intersections, and, in addition thereto, one-fourth the cost of paving the roadway between the street intersections in the case of ordinary streets, and one-third the cost of paving the roadways between street intersections in the case of neutral ground streets; the owner or owners of real property were required to pay three-fourths the cost of paving the roadway between street intersections in the case of ordinary streets and two-thirds the cost of paving the roadway between street intersections in the case of neutral ground streets; the cost of paving the roadway between street intersections was required to be equally apportioned by the running foot front throughout the street, or portion thereof that is paved, regardless of the actual distribution or situation of the several items of work included in the roadway paving—that is, the whole cost of the entire roadway paving between the entire street intersection should be determined and then divided by the total length of real property on both sides of the street within the limits of the roadway paving, thereby establishing a rate of cost per running foot, which cost was to be apportioned between the city and owners of real property as thereinbefore described.

Act No. 105 of 1921 amended the Act of 1912, and relieved the city of New Orleans from paying any part of the cost of paving at intersections or between intersections, and put the whole cost on the abutting proprietors.

In section 45 of the Act of 1921, under the head of "Apportionment of Cost" it is provided:

"The cost of original paving of roadways * * * shall be * * * as follows:

"The entire cost of such paving between intersections shall be equally apportioned on the basis of foot frontage, and shall be borne by the owners of the real property abutting on the street or portion which shall have been paved.

"One-half of the cost of such paving, at intersections, shall be equally apportioned on the basis of foot frontage, and shall be borne by the owners of real property abutting on the street or portion thereof which shall have been paved, and one-half of the cost of such paving, at intersections, shall be equally apportioned on the basis of foot frontage, and shall be borne by the owners of real property abutting on the intersecting streets within one-half of the length of each block on each side of the intersection."

The provisions quoted from the Act of 1921 were reproduced in Act 191 of 1924.

These provisions appear to us plain and unambiguous.

The total cost of paving between intersections is required to be apportioned on the basis of foot frontage on the street paved without regard to the depth of the lot or square, and this total cost is to be borne by the abutting owners.

The paving at intersections shall likewise be apportioned equally on the basis of foot frontage, and one-half of the cost shall be borne by the owners of real property abutting on the street and one-half shall be equally apportioned on the basis of front footage, and shall be borne by the owners of real property abutting on the intersecting streets within

one-half of the length of each block on each side of the intersection; provided that, if the area of the intersection to be paved shall exceed 360 square yards, then the excess of the area shall be paid for by the city.

In other words, the abutting owners between intersections shall pay the entire cost of paving between intersections on the basis of front footage on the street paved, and in addition thereto one-half of the paving at intersections. The other half of the cost of paving at intersections shall be apportioned equally, on the basis of foot frontage, and shall be paid for by the owners of real property abutting on the intersecting streets within one-half of the length of each block on each side of the intersections, not to exceed an area of 360 square yards.

This method of apportionment seems to have been practically followed by the city in making the charge against the property of the plaintiff.

At least we do not understand that the plaintiff complains at the paving charges against its property beyond the 34 feet on each side of the avenue paved. The plaintiff is satisfied with the assessment made by the city against 121-foot frontage of square 365 and 86-foot frontage of square 398.

But it is contended that the area of 34 feet on each side of the avenue which was paved by the railroad company is not subject to the assessment, for the reason that, having already been paved, it cannot be regarded in the computation as fronting on the avenue within the meaning of the statute.

The contention in our opinion is not well taken, and cannot be supported under the terms of statute.

The expressed purpose of the statute was to require all abutting owners without excep-

tion to bear their proportion of paving between intersections and their proportion of one-half of the paving at the intersections. If, therefore, the plaintiff was relieved from contributing its proportionate share of one-half of the cost of paving at the intersections and there are a number of them, then it would throw the whole burden of paying one-half of the cost of paving at the intersections on the other abutting proprietors between the intersections, the injustice and unfairness of which is perfectly obvious.

It may be that, if the proper showing had been made, the plaintiff could, under the statute, have been relieved of paying the proportion of the cost between intersections which the 34 feet would otherwise have been required to bear. But, be that as it may, the cost of paving between intersections has not been separated from the cost of paving at intersections. Hence there is no way of arriving at the proportion which the plaintiff could be relieved on this score, if entitled to such relief, the decision on which question is reserved.

The contention of the plaintiff, however, as already stated, is that the 34 feet should not bear any portion of the paving, either at or between intersections, to which we cannot assent.

It was a part of the defendant's contract to pave this 34 feet as a consideration for the privilege of laying its tracks across the avenue. It is to be presumed, therefore, that the railroad company got value received for the amount of paving it made. For this reason, if no other, the plaintiff is not entitled

to be relieved from having the paved area included in the computation of the total area to be assessed.

The trial judge very appropriately said:

"It had received its quid pro quo by operating and the city paid its quid pro quo by getting the paving. The matter was at an end and had been paid and discharged."

█ It is alleged in the petition that, if the paving statute is construed otherwise than as contended by plaintiff, then said statute violates the State and Federal Constitution, in that it does not provide for uniform taxation upon the same class of subjects throughout the territorial limits of the authority levying the tax and takes from plaintiff its property without due process of law.

We are unable to conceive, and the plaintiff has not pointed out, wherein the paving assessment provided by the statute is class legislation or is not uniform on all abutting owners. Each and every owner is assessed according to front footage.

The question of whether plaintiff's property abuts the street or whether it should or should not be assessed because of having been paved by the owners, does not affect the constitutionality of the statute as being unequal and not uniform.

█ And an assessment according to the front foot rule is not taking one's property without due process of law. Donaldson's Heirs v. City of New Orleans, 166 La. 1060, 118 So. 134.

For the reasons given, the judgment appealed from is affirmed.