182 So. 753

HAGMANN v. CITY OF NEW ORLEANS.

No. 34979.

July 7, 1938.

Rehearing Denied July 8, 1938.

Luther E. Hall, of New Orleans, for appellant.

Francis P. Burns, City Atty., and William Boizelle, Asst. City Atty., both of New Orleans, for appellee.

HIGGINS, Justice.

This is an appeal by the owner of real estate from a judgment of the district court refusing to grant an injunction restraining the officials of the City of New Orleans from proceeding with a certain project for the paving of Ninth Street, in the City of New Orleans, and holding that the Ordinance under which the work was undertaken and Section 45 of Act No. 159 of 1912, as amended by Act No. 338 of 1936 and Act No. 8 of 1938, are constitutional.

The trial judge, in his written opinion, has so clearly stated the issues, analyzed them, and supported his conclusions with pertinent authorities, we quote it in full, with approval:

"The plaintiff, George Hagmann, alleging himself to be the owner of two lots of ground, one on the upper side of Ninth Street, and the other on the lower side of the same street, between Laurel and Annunciation Streets, in the City of New

Orleans, has applied for the issuance of a writ of injunction against the defendant (under Section 44 (g) of the Charter of the City of New Orleans, Act No. 159 of 1912, as amended by Act No. 338 of 1936) to enjoin or prevent the paving of Ninth Street, within the limits of the project hereinafter stated, .and in front of plaintiff's properties.

"The Legislature of the State of Louisiana at its current session for the year 1938, adopted Act No. 8 of the session, which act became effective immediately upon its approval by the Governor on June 22, 1938. The purpose of this act was to amend the Charter of defendant, (Section 45 of Act No. 159 of 1912, as amended by Act No. 338 of 1936), with reference to that portion thereof dealing with the apportionment of cost to property owners of the original paving or repaving of roadways, between intersections, by providing that such cost, 'shall be determined either by the frontage or by the square foot area of such real .estate, abutting on such street, as may be provided by the Commission Council in the ordinance of intention adopted pursuant to paragraph (a) of Section 44 of the Charter of the City of New Orleans' (Act No. 8 of 1938, approved June 22, 1938).

"Accordingly, as soon as said law became effective the Commission Council introduced and passed .an ordinance (Ordinance .No. 14,750 C.C.S.) declaring and giving public notice of its intention to originally pave Ninth Street from the river side property line of Annunciation Street to the river side property line of Constance Street, within the limits of which the lots of plaintiff front or abut. Section 2 of the said Ordinance provided:

" 'That in consideration of the benefits accruing to the real estate abutting on said street, because of said improvements, the entire cost of said paving and system of sub-surface drainage, between intersections, shall be assessed against said real estate and paid for on the basis of the square foot area that the respective lots or portions of lots abutting on said street, between intersections, within the limits of. said project, bear to the entire cost of said improvement between intersections; provided that the property owner's portion of said cost shall not in any . case exceed $10.00 per front foot of said lots or portions of lots abutting thereon. And provided, further, that this cost shall not include individual charges, as provided in paragraphs (b), (d), (c) and (f) of Section 45 of Act 159 of 1912, as amended by Act 8 of 1936.'

"That at the meeting of the Commission Council on July 1, 1938, and before the adoption of the aforesaid ordinance, plaintiff filed a written protest, alleging reasons why the said ordinance should not be passed, and which are substantially those set out by him in his petition for a writ of injunction herein. This protest was formally over-ruled by the Council and the ordinance was adopted, whereupon plaintiff immediately applied to this Court for a preliminary writ of injunction, to be in due course made permanent.

"Plaintiff in his application to this Court states that, as will be seen from the map

attached to said ordinance, 'although petitioner's lots on both the upper and lower sides of Ninth Street have the ordinary and usual depth of lots in the City of New Orleans, the majority of the other lots on both sides of Ninth Street, from Annunciation to Constance Street, have substantially less average depth than petitioner's said lots; that as a result thereof petitioner's two lots will be assessed a greater portion of the paving cost of said street than will the majority of the other lots on said street.'

"Plaintiff then proceeds to attack the constitutionality and validity of the said ordinance on the following grounds, viz:

" '(1) That the method of assessment provided for in said ordinance (this is, according to the 'square foot', or superficial area of the lots abutting on the street), is 'discriminatory, arbitrary, unjust, inequitable, unreasonable, and grossly disproportionate and excessive with reference to the cost assessed against the other lots in said project, which have in the majority of cases a substantially wider frontage on said Ninth Street, and considerably average lesser depth, than those owned by petitioner, and therefore said Ordinance and said Act deprive petitioner of his property for a public purpose without due process of law, in violation of Section 2 of Art. 1 of the Constitution of Louisiana, as well as the Fourteenth Amendment of the Constitution of the United States [U.S.C.A.Const. Amend. 14] and likewise denies to petitioner the equal protection of the law also prohibited in said Fourteenth Amendment of the Constitution of the United States.

" '(2) That for the same reasons, said method of assessment, as applied to petitioner's property, violates the provisions of Section 1 of Article 10 of the Constitution of Louisiana, adopted in 1921, which requires that all taxes shall be equal and uniform upon the same class of subjects within the territorial limits of the authority levying the tax.

" '(3) That for the same reasons and facts, the said method of assessment, as applied to plaintiff's properties, is grossly disproportionate and is in excess of the value thereof, and consequently amounts to a taking or confiscation of plaintiff's properties, in violation of Section 1 of Article 10, Constitution of Louisiana, adopted in 1921, and likewise of Section 2, Article 1 of the Constitution of Louisiana, and of the Fourteenth Amendment of the Constitution of the United States.

" '(4) That said method of assessment, as applied to petitioner's lot No. 13, on the lower side of Ninth Street, which has a frontage of only 27.40 feet, and a superficial area of 3452.40 square feet, causes same to be taxed disproportionately and excessively to the other lots on the same side of said street, because the depth and area of plaintiff's lot (which is of the approximate average depth of lots in the City of New Orleans, that is, approximately 126 feet deep), is greatly in excess of the depth and square foot area of the majority of other lots situated in the same side of said square, although the frontage of plaintiff's lot is substantially less in width than the average frontage of said other lots, and for said reasons, the amount

assessable against petitioner's said lot, as compared to other lots on the same side of said street, and the benefits thereof, are so disproportionate and palpably arbitrary, unequal and unjust, as to be plainly in violation of the provisions of the Constitution and laws of the State of Louisiana, and of the United States, quoted above, or either of them.'

"The defendant in reply filed exceptions of no right or cause of action, coupled with a general denial, except to admit the filing of plaintiff's protest, its overruling and the adoption of the ordinance in question, coupled with a request for a speedy determination of the matter because of the great public interest involved.

"Thus it will be seen that there has been squarely raised the constitutionality and validity of the method of apportionment to property owners of the costs of a local improvement, according to the 'square foot', or superficial area of their properties abutting on said local improvement. No other attack is made on other portions of Act No. 8 of 1938, or the ordinance adopted in pursuance thereof, except in respect of the particular provision.

"While not so precisely stated this is not the first attack on a method of assessment as stated in Act No. 8 of 1938. However, in relation to the matter of apportionment for the cost of street improvements for many years the accepted rule has been according to the 'front foot' of the property abutting on any local improvement, irrespective of the depth of the adjacent property.

"As all of the objections urged by plaintiff are more or less cumulative, and point towards the same basic objection, it may serve the ends of this case to briefly review the principal cases which hold that plaintiff's objections are without merit, without specifically reviewing each of them.

"It may be conceded that the method of apportionment of cost for local improvements, according to the 'front foot rule' has long been embodied in the laws of this state and has been so frequently upheld by all Courts including the Supreme Court of Louisiana, that the constitutionality and validity of this method of apportionment is no longer in question.

"For example, starting with the provisions of Section 37 of Act No. 20 of 1882 (old Charter of New Orleans), down to Act 159 of 1912, as amended by Act 8 of 1938, such a method has been in use and has been frequently upheld, even though, as it has been stated, in some instances the cost of the improvement has exceeded the value of the property:

" 'It is now well settled that it is competent for the legislature to authorize assessments for public improvements to be made according to the frontage of the lots benefitted. Laws authorizing the assessment of benefits according to the front foot rule are not in violation of either the Federal or State Constitutions.' McQuillan on Municipal Corporations (1913 ed.) vol. 5, Section 2989; French v. Barber Asphalt Co., 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879; State ex rel. Ideal Savings & Homestead Ass'n v. City of New Orleans, 186 La. 705, 173 So. 179; Donald-

son's Heirs v. City of New Orleans, 166 La. 1059, 118 So. 134.

"In two recent cases the Supreme Court of this State brushed aside direct attacks on the constitutionality and validity of the front foot rule of apportionment, based largely on the same grounds urged by the present plaintiff to the application of the 'square foot' rule.

"The Supreme Court in discussing the application of the front foot rule, also contained in Act No. 8 of 1938, has said:

"'These provisions appear to us plain and unambiguous. The total cost of paving between intersections is required to be apportioned on the basis of foot frontage on the street paved without regard to the depth of the lot or square, and this total cost is to be borne by the abutting owners. * * * And an assessment according to the front foot rule is not taking one's property without due process of law.' New Orleans & Northeastern R. R. Co. v. City of New Orleans, 169 La. 1103, 126 So. 673, 674; Id., 173 La. 1115, 139 So. 642.

"In a certain sense, neither is the application of the method of apportionment by the 'square foot', or superficial area, new in this State, because, in effect, such a method has been upheld many years ago by our Supreme Court. The most notable case in this respect dealt with the matter of assessing property in New Orleans according to the acreage in order to support a tax for draining the City of New Orleans. This is the celebrated case of Davidson v. New Orleans, 96 U.S. 97-104, 24 L.Ed. 616. See also City of Lafayette v. Tanner, 149 La.

430, 89 So. 314; Dillon on Mun. Corp. (4 ed.) Vol. 4, Sec. 1432.

"Because the legislature has seen fit to incorporate into Section 45 of the Charter of the City of New Orleans, a rule of apportionment long since used in this State, but not so denominated, plaintiff has sought to raise against the application of said rule all of the allegations of unconstitutionality and invalidity heretofore urged to the 'front foot rule' of apportionment.

"To this there are several answers: The State legislature has power to create assessment or taxing districts, define their boundaries, and charge the cost of a local improvement, in whole or in part, on the property in such districts, either according to valuation, superficial area, or frontage, and it may do this directly, or through any municipal corporation. McQuillan on Municipal Corporations (1913 ed.) vol. 5, Secs. 2018-2052; Webster v. Fargo, 181 U.S. 394, 21 S.Ct. 623, 45 L.Ed. 912; Williams v. Eggleston, 170 U.S. 304, 18 S.Ct. 617, 42 L.Ed. 1047; Spencer v. Merchant, 125 U.S. 345, 8 S.Ct. 921, 31 L.Ed. 763; Parsons v. District of Columbia, 170 U.S. 45, 18 S.Ct. 521, 42 L.Ed. 943; Dillon on Mun.Corpns. (4 ed.) vol. 2, Sec. 752.

"As has been well stated such matters are for the discretion of the legislative judgment, and courts are reluctant to interfere therein save in cases of manifest fraud, palpable error, or abuse of that discretion. Duffy v. Peneguy, 148 La. 407, 87 So. 25; Walston v. Nevin, 128 U.S. 578, 9 S.Ct. 192, 32 L.Ed. 544; Shaw v. Board of Commissioners, etc., 138 La. 917, 918,

70 So. 910; McQuillan on Mun. Corporation (1913 ed.) Vol. 5, Sec. 2087.

"In the case of Moody & Co. v. Spotorno, 112 La. 1008, 36 So. 836, the Supreme Court of this State seems to have definitely put this matter at rest:

" 'This court is now thoroughly committed to the doctrine that the question of benefit vel non to particular property, included within a local assessment district because of its being similarly situated with all the other property of the district with reference to the work of public improvement for the cost of which the assessment. is levied, is a legislative and not a judicial question.' Kelly v. Chadwick, 104 La. 719, 723, 29 So. 295; Chadwick v. Kelly, 187 U.S. 540, 23 S.Ct. 175, 47 L.Ed. 293.

"In answer to the charge of plaintiff that his property will not be benefited in accordance with the assessment to be placed thereon, as well as his charge that the assessment is void for lack of equality and uniformity, let it be said:

"The rule is generally laid down and enforced that the usual constitutional mandate enjoining equality and uniformity in taxation does not apply to special assessments or taxation for local improvements. McQuillan on Mun.Corp. (1913 ed.) Vol. 5, Sec. 2021; City of New Orleans v. Elliott, 10 La.Ann. 59; In re City of New Orleans, 20 La.Ann. 497; Oakey v. Mayor etc., of New Orleans, 1 La. 1; Barber Asphalt Paving Co. v. Gogreve, 41 Là.Ann. 251, 5 So. 848; City of Lafayette v. Tanner, 149 La. 430; George v. Young, 45 La.Ann. 1232, 14 So. 137; Louisville & N.

R. Co. v. Barber Asphalt Co., 197 U.S. 430, 25 S.Ct. 466, 49 L.Ed. 819.

"The rule that a method of assessment cannot be arbitrary, and must have some relation to the benefits, appears reasonable. It would seem however that the legislature is competent to judge of benefits. A public improvement having been made, the question of determining the area benefited by such improvement is generally held to be legislative function, and such legislative determination, unless palpably unjust, is usually conclusive. Wiliams v. Eggleston, 170 U.S. 304, 18 S.Ct. 617, 42 L.Ed. 1047; Illinois Central R. Co. v. Decatur, 147 U.S. 190, 13 S.Ct. 293, 37 L.Ed. 132; Spencer v. Merchant, 125 U.S. 345, 8 S.Ct. 921, 31 L.Ed. 763; Parsons v. District of Columbia, 170 U.S. 45, 18 S.Ct. 521, 42 L.Ed. 943; Kelly v. Chadwick, 104 La. 719–731, 29 So. 295.

"When we come to examine the actual facts of plaintiff's case, and in answer to his fourth objection, we find that, within the limits of the proposed project, there are thirty three separate parcels of land. That the average frontage of all lots within the project is 39.42 feet, the average depth is 86.57 feet, and the average square area is 3,108.17 square feet. As against these average figures we find that the plaintiff's lot in Square 90 on the upper side of Ninth Street has a depth of 131.61 feet, a frontage of 30.00 feet, and a square area of 5,557.80 square feet. That plaintiff's lot in Square 91 on the lower side of Ninth Street has a depth of 126.00 feet, a frontage of 27.40 feet, and a square area of 3,452.40 square feet. The average square

area of each lot is 3,108.17 square feet. The square area of plaintiff's lot No. 13 on the lower side of Ninth Street is 3,452.40 square feet, and the square area of his lot Pt. 12 on the upper side of the street is 5,557.80 square feet.

"On the upper side of the street there are twelve property owners who would pay less than plaintiff, and three who would pay more. On the lower side of the street there would be five property owners who would pay less than plaintiff and eleven who would pay more.

"The total cost to all property owners is $10,009.26, and the average cost to all thirty-three property owners, according to the square foot rule, would be $303.31 per lot, whereas the cost to plaintiff by this method for his lot in Square 90 on the upper side of Ninth Street is $339.30, and his cost for the lot in Square 91 on the lower side of Ninth Street is $309.89, so that, pretermitting even a discussion of the well-settled principles of law hereinabove set forth, plaintiff has really nothing serious to complain about in regard to the application of the 'square foot rule' to his properties.

"Accordingly, it is the opinion of the Court that the method of apportionment of cost by the square foot rule as laid down in the Act and ordinance under attack is a valid and constitutional method of apportionment, and the exceptions of no cause of action and of no right of action filed by the defendant are hereby maintained, and plaintiff's suit is dismissed at his cost."

For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.